UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTT D. TORONYI and MELISSA TORONYI, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 03 C 3949 ) |
| BARRINGTON COMMUNITY UNIT SCHOOL DISTRICT 220, BARRINGTON COUNTRYSIDE FIRE PROTECTION DISTRICT, BARRINGTON FIRE DEPARTMENT, INC., VILLAGE OF BARRINGTON, JULIE GIARDINO, DAVID DANLEY, JOHN FEIT, | ) ) Judge Rebecca R. Pallmeyer ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Scott and Melissa Toronyi brought this suit against Defendants Barrington Community Unit School District 220, an Illinois municipal entity; Julie Giardino, individually and in her official capacity as Principal of the School District; Barrington-Countryside Fire Protection District, Barrington Fire Department, Inc., and the Village of Barrington, all of which are municipal corporations; David Danley, individually and in his official capacity as Village of Barrington Fire Chief; and John Feit, individually and in his official capacity as Village of Barrington Deputy Fire Chief. The suit stems from the termination of Mr. Toronyi's employment as a paid-on-call firefighter with the Barrington-Countryside Fire Protection District and the Barrington Fire Department, Inc., following a dispute between Mrs. Toronyi and Principal Giardino. Plaintiffs assert that as a result of Mrs. Toronyi's objections to and circulation of a petition against the school's policy concerning student transportation, school officials barred Mrs. Toronyi from picking her child up, on foot, at the regular dismissal time. They assert, further, that Mr. Toronyi lost his job as a firefighter with both Defendant fire districts in retaliation for his exercise of his First Amendment rights. (5th Am. Compl., Count I.) In addition to their First Amendment claims, Plaintiffs bring retaliatory discharge

claims under Illinois law, charging that the termination of Mr. Toronyi's employment with the Fire Department was retaliatory in violation of public policy. (*Id.* at Count II.) Finally, in Count III, Plaintiffs contend that Mr. Toronyi had a cognizable property interest in continued employment with the Fire Department, and that his termination violated both Plaintiffs' due process rights. The six Defendants bring two separate motions to dismiss Plaintiffs' claims. For the reasons set forth below, the Defendants' motions are granted in part and denied in part.

## BACKGROUND

Plaintiffs Mr. and Mrs. Toronyi are a married couple whose son, Tagnier, attended Roslyn Road Elementary School in Barrington Community Unit School District 220 (the "School District"). (5th Am. Compl. ¶ 18.) Until March 2002, Mr. Toronyi served as a paid-on-call firefighter employed by the Barrington-Countryside Fire Protection District (the "Fire Protection District"), Barrington Fire Department, Inc. (the "Fire Department"), and the Village of Barrington.[1] (*Id.* ¶ 13.) Mrs. Toronyi was a stay-at-home mother to her minor children. (*Id.* ¶ 17.)

In January 2002, Defendant Julie Giardino, the Principal of Roslyn Road Elementary School, sent a letter to the parents of all students at the school concerning changes in the dismissal procedure during upcoming construction on school grounds. (*Id.* ¶¶ 19-20.) The letter explained that all students would be assigned new bus routes, and that students were expected to ride the bus except in rare instances where it is absolutely necessary for parents to pick up their child directly at the school. (*Id.* ¶¶ 19, 21.) The restrictions were imposed, according to the letter, due to construction taking place on school grounds, and concern that cars would interfere with the loading and exiting of the buses. (*Id.* ¶ 20.)

For safety reasons, Plaintiffs did not want their child to ride the bus; instead, they sought

---

[1] The court is uncertain whether his firefighter position was Mr. Toronyi's only employment at the time. Nor have Plaintiffs explained the distinction between the Fire Protection District and the Fire Department, though they do allege that Mr. Toronyi was an employee of both entities, as well as of the Village of Barrington.

to continue driving him to and from school. (*Id.* ¶ 23.) According to the new school procedure, however, parents wishing to pick up their children were required to wait twenty to thirty minutes after dismissal while other students boarded the school buses. Only after the school buses departed were these waiting parents permitted to meet their children, who, in the interim, waited in the gymnasium under the guidance of a single adult volunteer. (*Id.* ¶¶ 22, 24.) Plaintiffs were concerned that their son would not be adequately supervised in the presence of older children. (*Id.* ¶ 25.) Mrs. Toronyi volunteered to serve as an additional supervisor, but Principal Giardino and the School District refused to allow her into the gymnasium to wait with her son and/or supervise the other waiting children.[2] (*Id.* ¶¶ 26-27.)

On an unspecified date, Mrs. Toronyi parked her car off school property and walked to the school to pick up her son in a manner that would not interfere with the loading or movement of the buses. (*Id.* ¶ 28.) As she did so, Mrs. Toronyi observed other students (the complaint does not say how many) being dismissed immediately as school ended to walk home with their parents. (*Id.* ¶ 30.) The complaint does not say whether Principal Giardino was aware of these other apparent violations of policy, but Plaintiffs allege that Principal Giardino refused to permit Tagnier Toronyi to leave with his mother. (*Id.* ¶ 28.)

Following this incident, Mrs. Toronyi circulated a petition in which she objected to the school's dismissal procedures, and asked that parents be allowed to pick up their children immediately at the end of the school day.[3] (*Id.* ¶ 31.) "Many concerned parents" signed the petition in protest of the newly-implemented dismissal procedures. (*Id.* ¶ 32.)

---

[2] Plaintiffs do not specify the manner in which Mrs. Toronyi made her offer to supervise the waiting children, nor do they indicate the form or reasons for the school's refusal. The court is uncertain whether any other parents volunteered to assist or whether any such offers were accepted.

[3] Plaintiffs' complaint does not explicitly discuss the timing of these events, but assuming they are presented in chronological order, the petition was circulated after the incident in which Mrs. Toronyi attempted to pick up her son on foot.

3

On March 14, 2002, Mrs. Toronyi and her sister attempted to walk onto school grounds to pick up her son, Tagnier. (*Id.* ¶ 33.) Upon reaching the school's property line, Mrs. Toronyi was confronted by Village of Barrington police officers and warned that she would be arrested if she proceeded onto school property. (*Id.* ¶¶ 34-35.) Mrs. Toronyi obeyed the officers, and did not step onto school property. (*Id.* ¶ 36.)

That same day, Mr. Toronyi attended a Parent Teacher Organization (PTO) meeting at the school.[4] (*Id.* ¶ 37.) The complaint does not say whether Mr. Toronyi made any statements at the meeting. Nor is it clear whether Mrs. Toronyi attended the meeting, though she was apparently on or near school grounds at the time it took place. As Mr. Toronyi left the meeting, Principal Giardano pulled him aside and asked him to wait for his wife at the rear school doors, on school premises. (*Id.* ¶ 38.) Mr. Toronyi did go to the rear of the school, where he stood for an unstated period of time before being asked by an Officer Croke of the Village of Barrington Police Department to move off school premises, which he did without incident. (*Id.* ¶¶ 38-39.) Whether Mrs. Toronyi had joined him by this time is not stated in the complaint.

Later on March 14, 2002, after the incidents at the school, John Gigerich, the President of the Fire Protection District, asked Mr. Toronyi to attend a meeting with Deputy Fire Chief John Feit. (*Id.* ¶ 41.) During this meeting, which took place that same evening, Feit told Mr. Toronyi that he had spoken with Principal Giardino, who had concerns about how Mr. Toronyi's actions affected the image of the Fire Department. (*Id.* ¶ 42.) Feit told Mr. Toronyi "that he had placed the fire department in a negative light due to his actions at Roslyn Road School, and as such was being

---

[4] Plaintiffs do not indicate whether the meeting occurred before, during, or after the incident with the police. Again, assuming the facts in the complaint are presented in chronological order, the meeting occurred at some point after Mrs. Toronyi's incident at the school on March 14.

terminated immediately from his position with [the fire department]."[5] (*Id.* ¶ 43.)

On May 12, 2003, Plaintiffs filed a *pro se* complaint in the Circuit Court of Cook County, alleging that their First Amendment rights had been violated by Mr. Toronyi's termination and by Mrs. Toronyi's inability to pick up her son at school. (Ex. A to Defendants' Notice of Removal of Civil Action to the United States District Court.) On June 11, 2003, Defendants removed the case to federal court. (Defendants' Notice of Removal of Civil Action to the United States District Court.) On September 4, 2003, the court granted Defendants' motions to strike and dismiss Plaintiffs' initial complaint without prejudice.

Since then, Plaintiffs have filed a series of amended complaints. On July 7, 2004, Plaintiffs, now represented by counsel, filed their most recent amended complaint (their fifth). In it, they bring claims under 42 U.S.C. § 1983 against the Defendants identified above. Plaintiffs allege that: (1) all Defendants violated their First Amendment rights by depriving Mrs. Toronyi of "the society of her child" and terminating Mr. Toronyi's employment, in retaliation for his "standing by" his wife during her ongoing protests against the school dismissal policy (Count I); (2) Mr. Toronyi's termination represented, under Illinois law, a retaliatory discharge without cause or justification and in contravention of public policy (Count II); and (3) Mr. Toronyi had a cognizable property interest in continued employment with the Fire Department, and, as such, his termination violated both Plaintiffs' due process rights (Count III).

On July 15, 2004, Defendants Village of Barrington, David Danley, and John Feit filed a motion to dismiss Plaintiffs' Fifth Amended Complaint. Defendants School District and Julie Giardino moved to dismiss on July 23, 2004. The Fire Department and Fire Protection District

---

[5] Why Mr. Toronyi's alleged conduct would have troubled Feit is unexplained. The complaint alleges that Mr. Toronyi merely: (a) attended a PTO meeting; (b) followed the principal's direction to wait for his wife; and (c) departed the school premises at a police officer's request. Plaintiffs also allege that Mr. Toronyi "supported his wife . . . when she voiced her concerns about" the school policies, (5th Am. Compl. ¶ 45.), but does not indicate where or how he did so.

moved to join portions of the Village of Barrington's motion to dismiss on September 8 and 9, 2004. Both motions raise many of the same or similar legal issues. Accordingly, the court will examine the motions as one, focusing first on the claims of Mrs. Toronyi, and then on those brought by her husband.

## DISCUSSION

In reviewing a Rule 12(b)(6) motion to dismiss, a court takes as true all factual allegations in the plaintiffs' complaint and draws all reasonable inferences in their favor. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). The purpose of a motion to dismiss is not to decide the merits of a case, but rather to test the sufficiency of the complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Thus, a motion to dismiss will be granted only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Hernandez v. City of Goshen*, 324 F.3d 535, 537 (7th Cir. 2003).

### I. Mrs. Toronyi's Claims

Although the complaint is not a model of clarity, Plaintiff Melissa Toronyi insists that she herself has three claims for relief–(1) First Amendment retaliation; (2) retaliatory discharge; and (3) denial of due process–against all six Defendants. (Plaintiffs' Response to Defendants' Motion to Dismiss, at 3-4.) The court will address the motions to dismiss each claim in turn.

#### A. Retaliatory Discharge and Due Process Claims

As an initial matter, Mrs. Toronyi's retaliatory discharge and due process claims must fail because she has no standing to challenge her husband's termination. Procedural due process is only required where the plaintiff has been deprived of a protected interest. *Sonnleitner v. York*, 304 F.3d 704, 711 (7th Cir. 2002), citing *Townsend v. Vallas*, 256 F.3d 661, 673 (7th Cir. 2001). In order to establish the existence of a protected interest, "a plaintiff must be able to point to a

substantive state-law predicate creating that interest." *Omosegbon v. Wells*, 335 F.3d 668, 674 (7th Cir. 2003), citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Plaintiffs have cited no cases suggesting that a non-employee is entitled to procedural due process prior to the termination of another person's employment, even if that other person is his or her spouse. Defendants' motions to dismiss Mrs. Toronyi's due process claims (Count III) are granted.

Mrs. Toronyi's retaliatory discharge claims are similarly improper. Under Illinois law, "a plaintiff states a claim for retaliatory discharge 'only if she alleges that she was (1) discharged; (2) in retaliation for her activities; and (3) that the discharge violates a clear mandate of public policy.'" *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 707 (7th Cir. 2004), quoting *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29, 35, 645 N.E.2d 877, 880 (1994). Neither the Illinois courts nor legislature have extended this cause of action to allow suits by an individual based on the termination of her spouse. Thus, Mrs. Toronyi's retaliatory discharge claims (Count II) are dismissed.

### B. First Amendment Retaliation Claims

Mrs. Toronyi's First Amendment retaliation claim is two-fold. She alleges that, in retaliation for her protests of school policy, school officials (1) acted to deprive her of the society of her child and (2) told her husband's employer that his actions were placing the Fire Department in a bad light, which resulted in his termination. The court notes, initially that Plaintiffs' allegations demonstrate that the first of these–depriving her of access to her son–was imposed as a matter of school policy and, on its face, had nothing to do with her protected speech.

Plaintiff nevertheless asserts that the School District and Giardino retaliated against her. For their part, Defendants School District and Giardino appear to concede the ability of Mrs. Toronyi to allege a constitutional injury (Defendants School District and Giardino's Reply Brief, at 5), but in the court's estimation, any harm she suffered was *de minimis*. The Seventh Circuit has

held that "[a]ny deprivation under color of law that is likely to deter the exercise of free speech, whether by an employee or anyone else, is actionable . . . if . . . the circumstances are such as to make such a refusal an effective deterrent to the exercise of a fragile liberty." *Power v. Summers*, 226 F.3d 815, 820 (7th Cir. 2000). Other Circuits have adopted a similar test for retaliation claims outside of the employment context,[6] requiring non-employee plaintiffs to prove:

> (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

*Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998). As noted, plaintiff here simply alleges that, like other parents, she was required to wait for school buses to exit before picking up her son. Even if Mrs. Toronyi was treated differently than other parents on some occasions, the court finds it doubtful that holding her child among his classmates for twenty to thirty minutes after the end of the school day constitutes an effective deterrent to an individual's exercise of First Amendment rights. Indeed, Mrs. Toronyi was not deterred: she proceeded to publicly protest school policy *after* the incident.

The court recognizes that, at least in the employment context, the Seventh Circuit has held that "even minor forms of retaliation can support a First Amendment Claim, for they may have just as much of a chilling effect as more drastic measures." *Smith v. Fruin*, 28 F.3d 646, 649 (7th Cir. 1994), *see also DeGuiseppe v. Village of Bellwood*, 68 F.3d 187, 192 (7th Cir. 1995) ("Under the law of this Circuit, retaliation need not be monstrous to be actionable under the First Amendment . . . ."). Indeed, in one oft-cited case involving baseless reprimands and ridicule for bringing a birthday cake to the office, the Seventh Circuit concluded that "we cannot say as a matter of law

---

[6] The majority of retaliation claims occur within the employment context. For a discussion of the distinction between First Amendment retaliation claims inside and outside of the employment context, see *The Chicago Reader v. Sheahan*, 141 F. Supp. 2d 1142, 1144-46 (N.D. Ill. 2001).

that the exercise of First Amendment rights by public employees cannot be deterred by subjecting employees who exercise them to harassment and ridicule through selective enforcement of work rules." *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). Even under this generous formulation, however, a retaliation plaintiff must allege an injury. "It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise. . . ." *Bart*, 677 F.2d at 625. In the court's view, the inconvenience of having to pick up her child twenty or thirty minutes later than usual falls within the realm of the trivial. The retaliation (if that is what occurred here) was markedly milder than even that in *Bart*, the "birthday cake" case, in which the plaintiff's co-workers engaged in an "entire campaign of harassment which though trivial in detail may have been substantial in gross." *Id.*

In any event, as noted earlier, Plaintiffs' own allegations demonstrate that being required to wait for her child was not a product of retaliation at all: school policy required other parents to wait for their children as well. The fact that Mrs. Toronyi allegedly observed some parents violating this policy does not mean that enforcing it against her was retaliation. Even if it were, given the context of the action, the court concludes that, as a matter of law, such a minor inconvenience is not actionable.

It is unclear whether Mrs. Toronyi cites her husband's termination as a basis for her own First Amendment retaliation claim. For reasons explained earlier, the court does not believe Mrs. Toronyi enjoys any protected interest in her husband's employment. In any event, according to the complaint, Mr. Toronyi's termination stemmed from concerns about the effect his "support" for his wife in her feud with Principal Giardino and the school had on the Fire Department's image. (5th Am. Compl. ¶ 45.) As Plaintiffs do not allege that the termination was caused by Mrs. Toronyi's actions, it cannot serve as the basis for a First Amendment retaliation claim on her behalf.

All Defendants' motions to dismiss Mrs. Toronyi's claims are dismissed.

## II. Mr. Toronyi's Claims

Like his wife, Mr. Toronyi brings First Amendment retaliation, retaliatory discharge, and denial of due process claims against all six Defendants. The court will again address each claim in turn.

### A. First Amendment Retaliation

The Seventh Circuit has adopted a three-part test for analyzing First Amendment retaliation claims. A plaintiff must demonstrate, first, that his speech was constitutionally protected and, second, that the speech was a substantial or motivating factor in the termination. Third, defendants then have an opportunity to show that the plaintiff would have been fired even in the absence of protected speech. *Cygan v. Wisconsin Dep't of Corrections*, 388 F.3d 1092, 1098 (7th Cir. 2004), citing *Sullivan v. Ramirez*, 360 F.3d 692, 697 (7th Cir. 2004).

Defendants urge that Mr. Toronyi cannot maintain a claim for First Amendment retaliation because he did not engage in any protected speech. The sole allegation in the complaint relating to Mr. Toronyi's purported First Amendment activity is unfortunately ambiguous, a reference to his "support" for his wife "when she voiced her concerns" about school policies. (5th Am. Compl. ¶ 45.) The complaint does not allege that Mr. Toronyi spoke out at all at the PTO meeting or at any other point prior to his dismissal.

The First Amendment protects not only spoken and written words, however, but also "conduct, symbols, and non-verbal speech which attempt to express an idea or convey a message that will likely be understood by the viewer." *Brandt ex rel. Brandt v. Board of Educ. of Chicago*, 326 F. Supp. 2d 916, 920 (N.D. Ill. 2004), citing *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 296 (1984); *Spence v. State of Washington*, 418 U.S. 405, 409-11 (1974). Plaintiffs here allege that Deputy Chief Feit specifically referred to Mr. Toronyi's behavior as casting a "negative light" on his employer, yet all of Mr. Toronyi's alleged conduct was neutral or cooperative. Reading

10

his allegations liberally, the court is satisfied that the allegation that Mr. Toronyi "stood by" his wife when she spoke out against school policy could constitute expressive conduct protected by the First Amendment.[7]

Having sufficiently alleged that he engaged in protected speech or conduct, Mr. Toronyi can maintain a First Amendment retaliation claim against his employers–the Fire Department, the Fire Protection District, and the Village of Barrington–who, according to Plaintiffs' allegations, terminated his employment in retaliation for his First Amendment activity.[8] The remaining Defendants–Deputy Fire Chief Feit, Fire Chief Danley, Principal Giardino, and the School District–move to dismiss on other grounds.

### 1. Deputy Fire Chief Feit

Defendant Feit moves to dismiss Mr. Toronyi's First Amendment retaliation claim against him in his official capacity on the basis that the official capacity claim is duplicative of his claims brought against the municipality itself. Plaintiffs do not respond to this claim, and the court agrees that the official capacity claim is, in fact, redundant. The Seventh Circuit has held that whenever a complaint names both a municipality and a municipal official sued in his or her official capacity,

---

[7] To the extent that Mr. Toronyi alleges that his termination was motivated by his wife's free speech, he may be able to bring a First Amendment retaliation claim based on the right of intimate association. See, e.g., Adler v. Pataki, 185 F.3d 35, 44 (2d Cir. 1999) (an adverse action against plaintiff's spouse in retaliation for plaintiff's speech should be analyzed as a claimed violation of the First Amendment right of intimate association); Anderson-Free v. Steptoe, 970 F. Supp. 945, 957-58 (M.D. Ala. 1997) (recognizing claim for infringement of right of intimate association after plaintiff suffered adverse employment action motivated by spouse's protests against employer). Although Plaintiffs have not brought a cause of action based on Mr. Toronyi's right of intimate association, a complaint need not identify a correct legal theory in order to survive scrutiny so long as it is sets forth facts that could support a claim. Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1078 (7th Cir. 1992) ("[T]he complaint need not identify a legal theory, and specifying an incorrect theory is not fatal.").

[8] The fact that, as a paid-on-call firefighter, Mr. Toronyi was an at-will employee does not alter the First Amendment retaliation analysis. See, e.g., Board of County Comm'rs, Wabaunsee County v. Umbehr, 518 U.S. 668, 680 (1996) (holding that First Amendment retaliation claims may be brought by independent contractors with no right to continued government employment).

11

"[a]ctually there is one defendant – the city – not two." *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987). Because adding an official liability claim in such a situation "makes no practical difference," such claims are properly dismissed. *See, e.g., Willis v. Bell*, 726 F. Supp. 1118, 1124 (N.D. Ill. 1989), quoting *Jungels*, 825 F.2d at 1129. Plaintiffs' request that the court postpone dismissal of these claims until after discovery finds no support in the case law.

Here, in addition to his official-capacity claim against Deputy Fire Chief Feit, Mr. Toronyi brings identical claims against the Village of Barrington, the Fire Department, and the Fire Protection District, all of which are municipal corporations. In light of these claims, the official capacity claim against Feit makes "no practical difference" and is dismissed. Mr. Toronyi retains a First Amendment retaliation claim against Feit in his individual capacity.

### 2. Fire Chief Danley

Defendant Danley moves to dismiss Mr. Toronyi's First Amendment retaliation claims against him in his individual capacity, arguing that Plaintiffs failed to allege personal involvement in the claimed deprivation of their constitutional rights.

To establish individual liability under section 1983, a plaintiff must demonstrate that a defendant was personally responsible for the deprivation of the constitutional right. *Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997), citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). Individual liability may not be imposed under a theory of *respondeat superior*. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Nor may supervisors be held liable for mere negligence in supervising and preventing constitutional violation by their employees. *Gossmeyer*, 128 F.3d at 495 (citations omitted). Rather, "supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either *knowingly* or with *deliberate, reckless indifference*." *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997), *quoting Jones v. City of Chicago*, 856 F.2d

985, 992 (7th Cir. 1988). In the present case, the factual narrative presented in Plaintiffs' complaint does not involve or even mention Fire Chief Danley. Rather, the narrative alleged that Deputy Fire Chief Feit spoke with Principal Giardino about Plaintiffs' behavior at the school and, subsequently, fired Mr. Toronyi. As explained above, Defendant Danley cannot be held individually liable for the actions of Defendant Feit on the basis of his supervisory relationship alone.

Plaintiffs do make a number of conclusory allegations against Danley himself: (1) that his actions "evince[d] a widespread policy or custom of disciplining and/or terminating employees who speak out on matters of public concern" (5th Am. Compl. ¶ 52); (2) that he acted "with malice, wilfulness, and reckless indifference to the rights of Plaintiffs" (*Id.* ¶ 55); and (3) that his actions "were done with deliberate oppression and were done wilfully or with such gross negligence as to indicate wanton disregard for Plaintiffs' rights." (*Id.* ¶ 56.) Although the fact that Plaintiffs' allegations against Danley are merely conclusory does not automatically condemn them as insufficient under Rule 12(b)(6), *Brownlee v. Conine*, 957 F.2d 353, 354 (7th Cir. 1992), a complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 507 (2002). Here, Plaintiffs provide no factual allegations related to the alleged involvement of Fire Chief Danley in the termination of Mr. Toronyi's employment. The court concludes that their conclusory allegations related to Defendant Danley are insufficient to state a claim against him in his individual capacity as to any of their § 1983 claims.

In addition, Defendant Danley moves to dismiss the official capacity claim as duplicative of the municipal claims brought against the Village of Barrington and fire departments. As discussed above, these claims are duplicative and therefore dismissed.[9]

---

[9] Although the court agrees that the official capacity claims against Defendants Danley and Feit should be dismissed as redundant, the court does not agree with Defendants' suggestion that Plaintiffs' inclusion of these claims is sanctionable under Rule 11 of the Federal
(continued...)

For these reasons, all claims brought by Plaintiffs against Defendant Danley are dismissed.

### 3. Principal Giardino and Barrington-Countryside School District

As discussed above, a public employee bringing a First Amendment retaliation claim must, in addition to demonstrating that he engaged in constitutionally protected speech activity, also show that the defendant took some adverse action against the plaintiff in retaliation for the protected speech. *Power*, 226 F.3d at 820. Although Mr. Toronyi engaged in protected speech activity, the complaint does not allege that the School District, which was not his employer, or Ms. Giardino herself, took any employment action against him as a result of this speech. Instead, Plaintiffs merely allege that Principal Giardino spoke with Deputy Fire Chief Feit and told him that "she had concerns about how the [fire department] was being portrayed by Scott Toronyi." (5th Am. Compl. ¶ 42.)

Principal Giardino's statement to Feit that she "had concerns" about the effect of Mr. Toronyi's behavior on the image of the fire department, is not sufficient to support a First Amendment retaliation claim against her. Her conduct is actionable, if at all, only if it is likely to deter a person of ordinary firmness from engaging in free speech. *DeGuiseppe*, 68 F.3d at 192. Although, as discussed above, courts have been generous in applying this standard, it cannot be said that Ms. Giardino's alleged personal criticism of him posed any deterrent to the exercise of protected speech by Mr. Toronyi. Moreover, the fact that Giardino is a municipal employee does not transform any personal feud or grudge she might have against the Toronyis into a constitutional issue. Neither the School District nor Principal Giardino took any adverse employment action nor used their authority as state officials to retaliate against Mr. Toronyi for exercise of his free speech

---

[9](...continued)
Rules of Civil Procedure. (Defendants' Motion to Dismiss, at 4.) As for Defendants' suggestion that the costs of bringing such duplicative claims should be borne by Plaintiffs and their attorneys, rather than the taxpayers of Barrington, (*id.*), such considerations are premature at this time.

14

rights. For this reason, Mr. Toronyi's First Amendment retaliation claims against them must be dismissed.

For the above reasons, the court dismisses Mr. Toronyi's First Amendment retaliation claims against Defendants Giardino and Danley, in both their official and individual capacities, Barrington School District, and Feit, in his official capacity. Mr. Toronyi retains First Amendment retaliation claims against the Fire Department, the Fire Protection District, the Village of Barrington, and Feit, in his individual capacity.[10]

### B. Retaliatory Discharge

The tort of retaliatory discharge has been recognized in Illinois as an exception to the doctrine of at-will employment. *New Horizons Elec. Marketing, Inc. v. Clarion Corp. of America*, 203 Ill. App. 3d 332, 336, 561 N.E.2d 283, 285 (2d Dist. 1990). To state a claim for retaliatory discharge under Illinois law, a plaintiff must allege that: (1) he exercised a statutory or constitutional right; (2) he was discharged in retaliation for his activity; and (3) the discharge was in contravention of a clearly mandated public policy. *Selof v. Island Foods, Inc.*, 251 Ill. App. 3d 675, 677-78, 623 N.E.2d 386, 387 (2d Dist. 1993) (citations omitted). A discharge violates "clearly mandated public policy" where it "strike[s] at the heart of a citizen's social rights, duties, and responsibilities." *Palmateer v. Int'l Harvester Co.*, 85 Ill. 2d 124, 130, 421 N.E.2d 876, 878-79 (1981). Such policies are found "in the State's constitution and statutes and, when they are silent, in its judicial decisions." *Id.* at 130, 878, citing *Smith v. Board of Education*, 405 Ill. 143, 147, 89 N.E.2d 893, 896 (1950).

Illinois has recognized retaliation for First Amendment speech as a basis for retaliatory discharge claims of government employees. *Daniel v. Village of Hoffman Estates*, 165 Ill. App. 3d

---

[10] Neither the Fire Department, the Fire Protection District, nor the Village have raised a *Monell* defense, and the court presumes they have conceded, for purposes of this motion, that Feit was an official policymaker for each of these entities. *See Monell v. Dep't of Social Servs.*, 438 U.S. 658, 694 (1978).

15

772, 520 N.E.2d 754 (1st Dist. 1987); *compare Barr v. Kelso-Burnett Co.*, 106 Ill. 2d 520, 526-27, 478 N.E.2d 1354, 1356-57 (1985) (holding that First Amendment retaliatory discharge claim may not be pursued against private employer because constitutional guarantee of free speech only protects against infringement by government). The Illinois courts have held, however, that a plaintiff cannot maintain a retaliatory discharge claim against a non-employer. *See, e.g., New Horizons Elec. Marketing, Inc.*, 203 Ill. App. 3d at 336-37, 561 N.E.2d at 285 (holding that retaliatory discharge doctrine "has not expanded outside of the *employment* setting," and thus does not apply to independent contractors) (emphasis in original). Thus, Mr. Toronyi's claims against Defendants Giardino and Barrington School District are dismissed.

In addition, Defendants Danley and Feit move to dismiss the claim against them in their official capacities as duplicative of Plaintiffs' municipal. As discussed above, a suit against a municipal official in his or her official capacity is no different than a suit against the municipality itself. Having also brought claims against a number of municipal entities, Plaintiffs' official capacity claims against Defendants Danley and Feit are duplicative and thus properly dismissed. *See, e.g., Willis v. Bell*, 726 F. Supp. 1118, 1124 (N.D. Ill. 1989), quoting *Jungels*, 825 F.2d at 1129.

Defendant Danley also moves to dismiss Mr. Toronyi's claim against him in his individual capacity. This motion is granted, as well. The Illinois Supreme Court has held that retaliatory discharge actions may only be brought against employers, not against the agent or employee who carried out the actual termination. *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12, 18-19, 694 N.E.2d 565, 568 (1998). Even where the individual employee "'devise[d] the plan' to discharge the plaintiff for an unlawful reason," the court held that suit is authorized only against the employer itself, noting that, in such cases, the "discharge is still authorized *by the employer.*" *Id.*

at 21, 694 N.E.2d at 570. For this reason, Mr. Toronyi's retaliatory discharge claim against Danley must be dismissed.[11]

The retaliatory discharge claims brought against Deputy Fire Chief Feit, in his individual capacity, the Village of Barrington, the Fire Protection District, and the Fire Department survive.

## C.     Due Process

The Due Process Clause requires that individuals be provided some form of hearing before they are deprived of a liberty or property interest. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citations omitted). Where a government employee has a property interest in continued employment, the State must provide certain procedures before terminating employment, including (1) notice of the charges; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to respond to the charges. *Wainscott v. Henry*, 315 F.3d 844, 852-53 (7th Cir. 2003), citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985); *Head v. Chicago Sch. Reform Bd. of Trustees*, 225 F.3d 794, 804 (7th Cir. 2000).

To determine whether a government employee has a protected property interest in continued employment, a court looks to state law. *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1345 (7th Cir. 1995), citing *Lohorn v. Michal*, 913 F.2d 327, 335 (7th Cir. 1990). Although Illinois state law provides firefighters with a property interest in their jobs, 65 ILCS 5/10-2.1-17, this interest is limited to full-time firefighters. 65 ILCS 5/10-2.1-26; *cf. Kyle v. City of Oak Forest*, 637 F. Supp. 980, 989 (N.D. Ill. 1986) (paid-on-call firefighters was presented by municipal ordinance against termination during his one-year term, but no due process claim to reappointment under state law). Mr. Toronyi, a paid-on-call firefighter, has identified no state law protecting his employment, and, as a result,

---

[11] The Illinois bar on retaliatory discharge claims against employees would also apply to the individual capacity claim against Defendant Feit, but he has not moved to dismissed this claim, but the court will entertain such a motion.

had no right to procedural due process prior to his termination. Mr. Toronyi's due process claims are dismissed.

## CONCLUSION

The motion to dismiss of Defendants Giardino and the Barrington Community Unit School District (Doc. No. 114-1) is granted. The motion to dismiss Defendants Village of Barrington, David Danley, and John Feit (Doc. No. 108-1) is granted in part and denied in part. The Barrington Fire Department's motions for joinder (123-1, 124-1) are granted. Specifically, all claims brought by Mrs. Toronyi are dismissed. All claims against Defendants Danley, Giardino, Feit, in his official capacity, and the School District are also dismissed. Mr. Toronyi retains First Amendment retaliation and retaliatory discharge claims against Defendant Feit, in his individual capacity, the Barrington Fire Department, the Barrington-Countryside Fire Protection District, and the Village of Barrington.

Finally, the court notes the Toronyis' request for leave, should these motions be granted, to amend their complaint. The Toronyis have not submitted any proposed new complaint, and the court is reluctant to rule on a motion not yet presented. In the context of this case, where Plaintiffs have filed no fewer than five complaints, the court would be reluctant to grant leave to submit yet another pleading. The time is ripe to complete discovery on those claims that have survived these motions to dismiss and proceed to summary judgment or trial.

ENTER:

Dated: February 10, 2005

REBECCA R. PALLMEYER
United States District Judge